UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH GRUBAUGH | CIVIL ACTION |
| VERSUS | NO: 13-3045 |
| CENTRAL PROGRESSIVE BANK, ET AL. | SECTION: **"J"** (4) |

### ORDER AND REASONS

Before the Court is Defendant Executive Risk Specialty Insurance Company ("Executive Risk")'s **Motion for Summary Judgment (Rec. Doc. 20)** and Plaintiff Joseph Grubaugh ("Grubaugh")'s opposition thereto **(Rec. Doc. 30)**.[1] Defendant's motion was set for hearing on December 18, 2013, on the briefs. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL HISTORY

This matter arises out of a breach of contract and

---

[1] Executive Risk filed for leave to file a reply memoradum on December 16, 2013. That motion will be denied as moot.

1

negligence claim. The underlying facts are largely undisputed for the purposes of this motion. Grubaugh became a depositor of Central Progressive Bank ("CPB") in September 2005. Grubaugh's mother and sister were employed at CPB at that time, and Grubaugh alleges that they stole money from his CPB account. In June and July of 2008, Grubaugh filed complaints with the Federal Deposit Insurance Corporation ("FDIC") and the Louisiana Office of Financial Institutions ("OFI") wherein he demanded reimbursement in the amount of $70,902.65. The FDIC and OFI notified CPB of Grubaugh's complaints on July 11, 2008 and July 22, 2008, respectively. On September 12, 2008, CPB responded to Grubaugh and denied all of his claims against it. CPB transmitted the same response that was sent to Grubaugh to the FDIC and OFI as its formal response to the complaints filed with those agencies.

On June 1, 2009, Grubaugh filed suit against CPB in the Twenty-Second Judicial District Court for the Parish of St. Tammany ("22nd JDC") against CPB; unnamed bank employees, officers, supervisors, and/or managers; and an unnamed Insurance Company. On June 7, 2009, CPB provided Executive Risk with notice of loss. On October 5, 2011, Grubaugh amended his petition to include Executive Risk, CPB's holding company Blossman

Bancshares, Inc. ("Blossman"), and the FDIC.[2]

Executive Risk was Blossman's insurer at the time of the aforementioned events. Executive Risk issued a policy of insurance ("the Policy") to Blossman that provided claims-made coverage for the policy period of February 1, 2007 through November 15, 2009. The parties agree that the Directors and Officers Liability ("D&O") and Bankers Professional Liability ("BPL") coverage sections of the Policy are potentially applicable in this case, and Grubaugh has asserted a direct action against CPB on these grounds. In response to this claim, Executive Risk filed the instant motion for summary judgment on November 18, 2013. Grubaugh filed a response on December 10, 2013.

## **PARTIES' ARGUMENTS**

Executive Risk argues that summary judgment is appropriate because Grubaugh, "as a direct action claimant, is only entitled to bring a direct action against an insurer within the terms of the insurance policy issued to the insured," and coverage does not exist in this instance. (Rec. Doc. 20, p.1) Executive Risk relies on First American Title Insurance Company v. Continental Casualty Company, 709 F.3d 1170 (5th Cir. 2013) to argue that

---

[2] The action was stayed due to Blossman's bankruptcy on January 3, 2012 until April 8, 2013 when the FDIC was substituted as Receiver for CPB. On May 16, 2013, the FDIC removed the action to this Court.

coverage does not exist because CPB did not notify it of Grubaugh's claims against it, and such reporting of claims is required to trigger coverage under a claims-made policy. Instead, Executive Risk points out that CPB did not notify it of any claim until almost a year after the FDIC and OFI complaints were received by CPB.

Grubaugh argues that Executive Risk's motion must be denied because Grubaugh's OFI and FDIC complaints are not "claims" as defined under the terms of the Policy. Even if they are claims, Grubaugh contends that this matter can be distinguished from First American because the claim was made and reported during the coverage period unlike in First American where the Court was dealing with a claim that was made during the coverage period but not reported until after the coverage period. Finally, Grubaugh contends that further discovery is needed to determine if Executive risk either waived its coverage defense and/or should be estopped from asserting it. Grubaugh points out that Executive Risk was notified of his claim over four years ago, but, notwithstanding Executive Risk's reservation of rights letter, it did not notify CPB of any coverage exclusion until after it was named and served in the instant lawsuit. Grubaugh contends that he was not made aware of this coverage issue until the filing of the instant motion, and therefore has not had adequate time to

propound discovery on the issue.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l

Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## DISCUSSION

### A. Executive Risk's Coverage Defense

Grubaugh has asserted a direct action against Executive Risk. Louisiana's Direct Action Statute "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. The Direct

6

Action Statute states its intent is that 'all liability policies *within their terms and limits* are executed for the benefit of all injured persons....'" Hood v. Cotter, 2008-0215 (La. 12/2/08), 5 So. 3d 819, 829 citing La. R.S. 22:655(D). Louisiana courts have consistently held that "the statute does not extend the protection of the liability policy to risks that were not covered by the policy unless another statute requires a mandatory coverage provision." Hood, 5 So. 3d at 829. Therefore, the Court must determine whether the risks at issue in this case were covered by the Policy to determine if Grubaugh may bring a direct action against Executive Risk. In making this determination, the Court must bear in mind that "[a]n insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written." Id. Even though courts "must construe any ambiguity in contractual terms against the insurer, [courts] have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language." Id.

Here, the D&O and BPL coverage sections of the Policy state, in pertinent part, that:

7

>   the Insured shall, as a condition precedent to
>   exercising any right to coverage under this Coverage
>   Section, give to the Company written notice of a Claim
>   as soon as practicable, but in no event later than
>   [...] sixty (60) days after the date on which any
>   insured first becomes aware that the Claim has been
>   made.

(Rec. Doc. 20-9, pps. 73 & 101) A "Claim" is defined in the D&O Coverage Section as:

>   a. a written demand for monetary damages;
>
>   b. a civil proceeding commenced by the service of a
>   complaint or similar pleading;
>
>   c. a formal civil administrative or civil regulatory
>   proceeding commenced by the filing of a notice of
>   charges or other similar document or by the entry of
>   a formal order of investigation or similar document;
>   or
>
>   d. a criminal proceeding commenced by the return of
>   an indictment,
>
> against an Insured Person for a Wrongful Act.

(Rec. Doc. 20-9, p. 64) A "Claim will be deemed to have first been made when such claim is commenced as set forth in this definition or, in the case of a written demand, when such demand is received by an Insured." (Rec. Doc. 20-9, p. 64) Under the BPL coverage section, the definition varies slightly, only in that subsections (a)-(d) must be brought "by or on behalf of a Customer[3] against an Insured for a Wrongful Act." (Rec. Doc. 20-

---

[3] Grubaugh qualifies as a Customer under the terms of the Policy. (Rec. Doc. 20-9, p. 93)

9, p. 93).

The OFI and FDIC complaints do not fall under subsection (c) of the definition of a Claim because neither agency ever instituted a formal investigation or issued a notice of charges. Rather, they simply accepted the complaint and ordered CPB to respond to the allegations, and neither party puts forth any evidence that the complaints ever went any further. However, Grubaugh's complaints to the OFI and FDIC, which were forwarded to CPB, could be considered a "written demand for monetary damages," as defined in subsection (a).

Black's Law Dictionary defines a demand as the "assertion of a legal or procedural right." Black's Law Dictionary 495 (9th ed. 2009). Here, in his letter to the FDIC, Grubaugh asks the FDIC to "help me get my money back from the bank for the forged checks, unauthorized debit memos, unauthorized payment of bills that do not belong to me, [and] unauthorized disbursement of my social security checks." (Rec. Doc. 20-5, p. 2) In his OFI complaint, Grubaugh states that the relief that he sought was "having my money returned to me and having someone that can do that from Central Progressive Bank contact me." (Rec. Doc. 20-4, p. 3) The parties agree that these letters were forwarded to CPB by the FDIC and the OFI on July 11 and July 22, 2008, respectively; thus, it is undisputed that CPB received these written demands.

(Rec. Doc. 20-6, 20-7) Pursuant to the plain language of the above-cited provisions, there is no requirement that Grubaugh submit the demand directly to CPB and/or Blossman. Rather, in the case of the D&O coverage section, the demand need only be made against CPB/Blossman and received by CPB/Blossman, which is exactly what happened here. Grubaugh demanded from CPB what he alleges is legally due to him, and that demand was received by CPB. Further, under the BPL Coverage Section, the demand may be made b*y* or *on behalf of* Grubaugh. In this case, the FDIC and the OFI submitted Grubaugh's demand on his behalf, thus a claim was made. Therefore, CPB's duty to notify Executive Risk was triggered on July 11, 2008 for the FDIC complaint and July 22, 2008 for the OFI complaint, long before Executive Risk received notice of the claim in July 2009 and long after the sixty day reporting period had elapsed. By breaching this requirement, CPB failed to comply with a condition precedent of the Policy and coverage was never triggered. See F.D.I.C. v. Barham, 995 F.2d 600, 604-605 (5th Cir. 1993) (Notice provisions in a claims-made policy should be strictly construed.)

Having determined that CPB did not timely notify Executive Risk of Grubaugh's claim, the issue becomes whether, in a claims-made policy, the insured's failure to timely notify the insurer of a claim acts to prohibit a third-party's direct action

against the insurer. In First American, the Fifth Circuit recently determined that, under a claims-made policy, a third party cannot bring a direct action against the insurer if the claim is not reported within the Policy period.[4] First American, 709 F.3d at 1174. Though this holding is distinguishable from the instant facts in that, here, CPB provided notice to Executive Risk within the Policy period but not within the Policy's reporting period, courts have recognized even before First American that "[a]n insured's failure to give **adequate notice** of claims under a claims-made policy [...] precludes the injured party's right of direct action." F.D.I.C. v. Caplan, 838 F. Supp. 1125, 1131 (W.D. La. 1993) (emphasis added). The sixty day reporting period, which is a condition precedent of coverage, is clearly and unambiguously provided for in the Policy, and by failing to comply with the notice provision's reporting requirement, CPB failed to give adequate notice of the claim. See Specialty Food Systems, Inc. v. Reliance Ins. Co. of Illinois, 45 F.Supp.23 541, 544 (E.D. La., Jan. 19, 1999) (Vance, J.)

---

[4] In First American, the Fifth Circuit recognized that state-court decisions on this issue vary, and that the "dissonance in these cases means that the intermediate state-court decisions do not significantly aid our *Erie* analysis." First American, 709 F.3d at 1176, n. 5. This Court also recognizes this dissonance and is compelled to follow Fifth Circuit precedent on the issue.

(emphasizing that when interpreting definitions of an insurance policy, courts are "compelled to apply the plain language of the policy"). Therefore, Grubaugh may not assert a direct action against Executive Risk. To allow him to do so would expand the coverage of the Policy beyond that which Executive Risk bargained for. First American, 709 F.3d at 1175.

**B. Waiver**

Grubaugh contends that the motion for summary judgment must be denied because there is an issue of material fact as to whether CPB waived its coverage defense or whether it should be estopped from asserting such a defense because of its delay in raising the defense. Grubaugh argues that Executive Risk has been aware of this claim since July 7, 2009, which was during the Policy period. Further, Executive Risk has been a defendant in this matter since October 5, 2011, but has only now asserted this defense to the direct action against it. Finally, Grubaugh asserts that, as a third party to the Policy at issue, he needs more time to propound discovery and determine what actions Executive Risk has taken and whether those actions constitute a waiver of their coverage defense.

In Sosebee v. Steadfast Ins. Co., 701 F.3d 1012 (5th Cir. 2012), the Fifth Circuit clearly explained the standard for determining whether an insurer waived its coverage defense under

Louisiana law:

> [A]n insurer can waive any provision of an insurance contract even if it has the effect of bringing within coverage risks originally excluded under the policy. If an insurer with knowledge of facts indicating noncoverage assumes an insured's defense without first reserving its rights to assert a noncoverage defense, the insurer waives its right to assert the defense. If an insurer assumes an insured's defense with knowledge of facts indicating noncoverage without first obtaining a non-waiver agreement, the insured may assume the insurer is acting in the insured's best interest with respect to coverage defenses the insurer has seemingly relinquished. Thus, "the insurer's notice of its intent to avail itself of the defense of noncoverage must be timely.

Id. at 1020. The Sosebee Court further explained that an insurer's timely reservation of rights may itself be waived if the plaintiff can show (1) misleading conduct on the part of the insurer and (2) prejudice to the insured. Sosebee v. Steadfast Ins. Co., 701 F.3d 1012, 1026-27 (5th Cir. 2012). "For an insurer to waive a provision of an insurance contract through its inconsistent conduct the insurer must either have "an actual intention to relinquish the right" or the conduct must be "so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished." Id. at 1027.

The record in this matter does not contain a reservation of rights letter sent by Executive Risk to CPB, but both parties

recognize that such a document was sent to CPB. Moreover, the record includes Executive Risk's answer to Grubaugh's state court complaint, dated June 28, 2012, wherein it states as its Twelfth Affirmative Defense that "[t]here is no coverage under the [Executive Risk] Policy because the insured did not provide notice of the claim within sixty (60) days after the date on which any Insured first becomes aware that the Claim has been made." (Rec. Doc. 1-8, p. 84) (internal citation omitted). Therefore, Grubaugh was not blind-sided by this assertion in the instant motion. Further, there is no evidence that Executive Risk ever took any other steps that were contrary to their intent to deny coverage. While it is true that a significant amount of time passed before this motion was filed, it must be noted that the case was stayed for an extended period of time due to Blossman's bankruptcy and was then tied up in removal proceedings before this Court, thus Executive Risk could not litigate, and had no reason to litigate, this coverage issue. Finally, Executive Risk's decision to refrain from litigating this issue, after having already sent a reservation of rights letter and having listed the defense in its answer, does not show that Executive Risk engaged in inconsistent conduct or exhibited an actual intention to relinquish its right to deny coverage.

Accordingly,

Executive Risk's **Motion for Summary Judgment (Rec. Doc. 20)** is **GRANTED**.

**IT IS ORDERED** that all claims by Joseph Grubaugh against Executive Risk Specialty Insurance Company are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Executive Risk's **Motion for Leave to File Reply Memorandum (Rec. Doc. 33)** is **DENIED AS MOOT.**

New Orleans, Louisiana, this 18th day of December, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE