UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH GRUBAUGH                              CIVIL ACTION

VERSUS                                       NO: 13-3045

CENTRAL PROGRESSIVE BANK, ET                 SECTION: "J" (4)
AL

### ORDER & REASONS

Before the Court is Defendant Federal Deposit Insurance Corporation as Receiver for Central Progressive[1] ("FDIC-R")'s **Motion for Summary Judgment (Rec. Doc. 57)**, Plaintiff Joseph Grubaugh ("Grubaugh")'s opposition thereto **(Rec. Doc. 62)**, and Defendant's reply memorandum to the same **(Rec. Doc. 73)**. Defendant's motion was set for hearing on February 26, 2014, on the briefs. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL HISTORY

The underlying facts are largely undisputed for the purposes of this motion and have been fully set forth in prior orders of this Court. (Rec. Doc. 34) Relevant to the instant motion, Grubaugh became a depositor of Central Progressive Bank ("CPB") in September

---

[1] Defendant points out for the sake of clarity that the FDIC-R is a separate entity from the FDIC-C despite the fact that both are named as Defendants in this matter.

2005 when he opened a checking account mostly with the intent of saving he and his then-minor son's Social Security checks and funds he received following Hurricane Katrina. Over the next few years, Grubaugh also opened a Certificate of Deposit, maintained a balance in his account, used his debit card for purchases, and occasionally accessed his account through an Automated Teller Machine ("ATM"). Grubaugh's interaction with his account was limited because he left much of the management of his finances to his mother, Louise Frances Grubaugh, who, along with his sister Shelli Tuillier, was an employee of CPB. Immediately following Ms. Grubaugh's death on May 26, 2008, Grubaugh alleges that he discovered that his account balance was only $1,500 because his mother and sister had committed several wrongful acts, including but not limited to writing fraudulent checks on his account, fraudulently transferring money out of his account, fraudulently creating a Joint Certificate of Deposit and a Joint Savings Account, etc. (See Rec. Doc. 1-3, pps. 2-3) Further, Grubaugh alleges that Defendant is liable for CPB's failure to supervise its employees, failure to follow or implement certain banking policies, breach Grubuagh's right to privacy, etc. (See Rec. Doc. 1-3, pps. 3-4)

After filing regulatory complaints with the Federal Deposit Insurance Corporation ("FDIC-C") and the Louisiana Office of Financial Institutions ("OFI") in July 2008, and after being informed that CPB denied all of his claims against it, Grubaugh filed suit in the Twenty-Second Judicial District Court for the

Parish of St. Tammany against CPB; unnamed bank employees, officers, supervisors, and/or managers; and an unnamed Insurance Company on May 26, 2009.[2] In his complaint, Grubaugh alleges that the conduct of the Defendants caused him $84,000 in losses and caused him "embarrassment, inconvenience, and emotional distress." (See Rec. Doc. 1-3, p. 4) Defendant filed the instant motion for summary judgment on February 11, 2014. A bench trial is set in this matter for April 7, 2014.

## **PARTIES' ARGUMENTS**

Defendant seeks summary judgment on all of Plaintiff's claims. It argues that Louisiana Revised Statute § 10:4-406 bars all of Plaintiff's claims that are based on unauthorized signatures and alterations because Plaintiff failed to inspect his bank statements and because he waited over a year from the time he received his bank statements to report such claims. Defendant further contends that, inasmuch as Plaintiff's allegations state a claim for conversion of negotiable instruments, his claims are likewise barred by a one year prescriptive period found in Louisiana Revised Statute § 10:3-230 that ran from the time the unauthorized payee was paid on the converted instrument. Finally, Defendant avers that Plaintiff may not bring a breach of fiduciary duty claim because

---

[2] On October 5, 2011, Grubaugh amended his petition to include Executive Risk Specialty Insurance company, Blossman Bancshares, Inc. ("Blossman") (CPB's holding company), and the FDIC. The action was stayed due to Blossman's bankruptcy from January 3, 2012 until April 8, 2013 when the FDIC was substituted as Receiver for CPB. On May 16, 2013, the FDIC removed the action to this Court.

Plaintiff has failed to produce any agreement between he and CPB that would create a fiduciary relationship as is required by Louisiana Revised Statute § 6:1124.

Plaintiff, on the other hand, contends that his claims for conversion and for unauthorized signatures and alterations have not prescribed because he filed suit within one year of discovering the wrongful acts. Plaintiff argues that, pursuant to Specialized Loan Servicing, LLC v. January, 2012-2668 (La. 6/28/13), 119 So. 3d 582, Louisiana's "discovery rule" applied to toll the prescriptive period on his claims because he has sufficiently alleged that fraud on the part of CPB kept him from being able to discover the inconsistencies in his account. Finally, Plaintiff contends that a fiduciary relationship between he and CPB existed due to the deposit agreement between the parties.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d

395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish

a genuine issue for trial.  See, e.g., id. at 325; Little, 37 F.3d at 1075.

## DISCUSSION

Defendant seeks summary judgment on all of Plaintiff's claims because (1) Grubaugh is barred from asserting claims regarding unauthorized signatures and alterations, (2) Grubaugh is barred from asserting claims for conversion of instruments, and (3) Grubaugh does not have a cause of action for breach of fiduciary duty because such a duty does not exist. Each issue is treated below.

### A. Unauthorized Signatures and Alterations

Per La. R.S. § 10:4-406(f):

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (Subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

La. R.S. § 10:4-406.[3]

The parties dispute whether this bar should apply from the time the statements were actually received by Grubaugh or from when the statements should have been received by Grubaugh. Additionally,

---

[3] Evidence submitted by Defendant suggests that the one year time frame set out in this provision was actually contractually shortened to sixty days in the deposit agreement between CPB and Grubaugh. (Rec. Doc. A-1, p. 3) Some courts have found that such a provision is permissible; but, in the instant case, because the actual deposit agreement has not been submitted to the Court, and because Defendant relies largely on the one year time frame in their arguments, the Court will restrain its analysis to the one year statutory period. See Groue v. Capital One, 2010-0476 (La.App. 1 Cir. 9/10/10) 47 So.3d 1038, 1043-44 (allowing a contractually shortened period, but recognizing that other courts have declined to honor similar provisions.)

Grubaugh argues that La. R.S. § 10:4-406 imposes a duty of good faith on the bank, and that if such good faith is not exercised, plaintiff's claim should not be barred.

In his deposition testimony,[4] Grubaugh admitted that after he opened his checking account at CPB, he would sometimes check the family Post Office box to which it was sent, and when he did so, he sometimes saw bank statements and ignored them because he "wasn't really fooling with the money." (Rec. Doc. 57-8, p. 7 & p. 13, lns. 15-25) Yet, all of his other bills, such as his phone bill, were sent to this box and he would sometimes open those. (Rec. Doc. 57-8, p. 14, lns. 1-6) This testimony makes it clear that, despite the fact that Ms. Grubaugh allegedly concealed the statements, Plaintiff nonetheless exhibited indifference towards his bank account and chose to rely on bank employees and his mother and sister to monitor his financial affairs. Further, despite Grubaugh's contentions to the contrary, La. R.S. § 10:4-406 does not require Grubaugh to have received the statements, rather it requires only that CPB sent or made the statements available. See,

---

[4] Plaintiff objects to the use of his deposition testimony in support of the instant motion for summary judgment because: (1) he has not yet read and signed the transcript and (2) his deposition has not yet concluded and his counsel has not yet been able to question him. Failure to read and sign the transcript has no bearing on the testimony used in this motion because the scope of the changes allowed upon such reading and signing will not affect the substance of the answers that he has given. The purpose of reading and signing is not to allow a deponent to go back and substantively alter his responses that were given under oath. Further, the fact that Plaintiff has not been deposed by his own counsel is irrelevant because he would not be allowed to simply contradict his own testimony to create an issue of fact and any further information that Plaintiff would like considered could have been, and actually was, included by way of a sworn affidavit. The Court has considered Plaintiff's affidavit and, even taking his statements as true, it finds that summary judgment is appropriate.

Gulf States Section, PGA, Inc. v. Whitney National Bank of New Orleans, 96-0844 (La.App. 4 Cir. 2/12/97) 689 So.2d 638, 640-641 (precluding recovery on forged checks despite the court's finding that the plaintiff's employee was intercepting the true statements and replacing them with forged statements); see also Marx, 713 So.2d 1142. CPB did send bank statements to Grubaugh's Post Office box, which is his mailing address, and/or made the statements available by allowing Grubaugh to access them at any time by going into the bank or calling the bank.[5] (Rec. Doc. 57-3, 57-4) Moreover, Plaintiff's argument that the provisions in La. R.S. § 10:4-406(a)-(c) require considerations of good faith fails because such considerations are irrelevant outside of the one year window proscribed in La. R.S. § 10:4-406(f). Accordingly, Grubaugh had one year to report any unauthorized signatures or alterations and failed to do so; therefore, he is precluded from making claims for all such unauthorized signatures and alterations in the instant litigation.[6]

---

[5] Though CPB eventually stopped mailing bank statements to the Post Office box, such statements were still available at the bank, thus Grubaugh would still be precluded for making claims based on forgeries. Further, even after the statements stopped being mailed, Grubaugh would likely still be precluded from making claims for any unauthorized signatures under the "same wrongdoer rule." Marx v. Whitney Nat. Bank, 97-3213 (La. 7/8/98) 7113 So.2d 1142, 1146-57 (customer bears the loss of successive forgeries by the same wrongdoer when the customer failed to review his bank statements and to discover and report the initial forgery.) The Court need not express on opinion on this rule, however, as it is not necessary to reach a result and because the parties did not brief the same wrongdoer rule in any detail.

[6] CPB reimbursed Grubaugh for all allegedly forged or unauthorized transactions on his accounts from March 18, 2008 through June 10, 2008.

**B. Conversion of Negotiable Instruments**

"La. R.S. 10:3-420 applies to circumstances where a payee on a check alleges that a bank paid the check to someone else not entitled to enforce the instrument." Specialized Loan Servicing, LLC, 119 So. 3d at 584. The statute provides, in pertinent part:

> (a) An instrument is converted when
> ...
> (iii) it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
> ...
> (f) Any action for conversion ... prescribes in one year.

La. R.S. § 10:3-420. This provision squarely applies to all instances where Grubaugh contends that CPB made payment on an instrument to someone, either his mother or sister, who was not entitled to endorse the instrument. Specialized Loan Servicing, LLC, 119 So. 3d at 584-585.

Defendant argues that Plaintiff's conversion claims are subject to a one year prescriptive period that runs from the date of the conversion and that this period is not subject to equitable tolling under the doctrine of *contra non valentem*/the "discovery rule" because the Louisiana Supreme Court has clearly stated that the discovery rule does not apply to the one-year prescriptive period on conversion claims brought pursuant to La. R.S. § 10:3-420. Grubaugh correctly points out, however, that in Specialized Loan Servicing, the Supreme Court left open a window for applying the doctrine of *contra non valentem* when the plaintiff proves fraud

on the part of the defendant. Id. at 590 (refusing to apply "discovery rule" because "[t]here is nothing exceptional about conversion cases that would necessitate the application of the discovery rule, because, **absent fraud on the part of the defendant**, the victim, using some diligence, should be able to quickly discover that he has been the victim of conversion)(emphasis added); Hardin Compounding Pharmacy, LLC v. Progressive Bank, 48-493 (La. App. 2 Cir. 9/25/13) 125 So.3d 493, 499 (recognizing that fraud could still be grounds to apply *contra non valentem*, but refusing to apply the doctrine due to lack of evidence of fraud.) Further, Grubaugh argues that he has submitted enough evidence to show that there was a fraudulent scheme that precluded him from discovering the alleged conversion–specifically that his mother and sister acted in concert, perhaps with another CPB employee, to hide their actions.

"The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 627 (5th Cir. 1999) Though Grubaugh submits some evidence that his mother and/or sister misrepresented a material fact with an intent to deceive, there is insufficient evidence to prove that Grubaugh's reliance on his mother and sister's representations was justifiable. One persistent

10

undercurrent of the banking laws that apply to this action are that bank customers have a duty to monitor their own affairs. Here, even assuming that Grubaugh did ask his mother about the statements shortly after he opened his account, it is difficult to conclude that asking that one question gave Grubaugh license to never question the absence of statements again even though over two and a half years passed without receiving statements. And, Plaintiff even admits to having seen and ignored some bank statements. Further, Defendant provides evidence that Grubaugh used ATMs at least occasionally and therefore should have seen a balance on the receipt; though, it is also admitted that Grubaugh does not remember any specific instance of using an ATM. (Rec. Doc. 57-8, p. 17. ln. 13)

   Based on this evidence, the Court finds that Plaintiff has not met his burden of proving fraud, meaning the prescriptive period on his conversion was not tolled under a theory of *contra non valentem*, and Plaintiff's claims for conversion have prescribed. This conclusion best reflects the UCC's "goals of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transaction," as well as the tenet that the "victim of conversion is often in the best position to prevent or detect the loss, and thus should be responsible to monitoring their accounts and employees to detect if they have been the victim of conversion of funds." Specialized Loan Servicing, LLC, 119 So. 3d at 589-590.

**C. Breach of Fiduciary Duty**

La. R.S. § 6:1124 states, in pertinent part,

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. [...] This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

La. R.S. § 6:1124. As Defendant aptly points out, Grubaugh has provided no evidence that he entered into any "written agency or trust agreement under which" CPB agreed to act as a fiduciary.[7] Therefore, Grubaugh cannot assert an action fo breach of fiduciary duty against Defendant because he has failed to prove that a fiduciary relationship existed.

Accordingly,

Federal Deposit Insurance Company as Receiver for CPB's **Motion for Summary Judgment (Rec. Doc. 57)** is **GRANTED**.

**IT IS ORDERED** that Plaintiff Joseph Grubaugh's claims against FDIC-R are **DISMISSED WITH PREJUDICE**.

---

[7] Grubaugh refers, somewhat cryptically, to a deposit agreement, though he does not share with the Court what the language of the deposit agreement entails, nor does he attach a copy of the agreement. Therefore, Grubaugh has not met his burden of proving that he entered into a written agreement that created a fiduciary relationship.

New Orleans, Louisiana this 27th day of February, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE