UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH GRUBAUGH                          CIVIL ACTION

VERSUS                                   NO: 13-3045

CENTRAL PROGRESSIVE BANK, ET             SECTION: "J" (4)
AL

### ORDER & REASONS

Before the Court is Defendant Federal Insurance Company ("Federal")'s **Motion for Partial Summary Judgment (Rec. Doc. 58)** and Plaintiff Joseph Grubaugh ("Grubaugh")'s opposition thereto **(Rec. Doc. 63)**. Defendant's motion was set for hearing on February 26, 2014,on the briefs, and this matter is set for a bench trial on April 7, 2014. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that Defendant's motion should be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL HISTORY

The underlying facts are largely undisputed for the purposes of this motion, and have been fully set forth in prior orders of this Court. (Rec. Doc. 34) Relevant to the instant motion, Grubaugh became a depositor of Central Progressive Bank ("CPB") in September 2005 when he opened a checking account. Over the next few years, Grubaugh also opened a Certificate of Deposit and regularly used CPB's services. Following his mother's death in May 2008, Grubaugh

alleges that he discovered that his mother and sister, both of whom were employed at CPB, committed several wrongful acts, including but not limited to writing fraudulent checks on his account, fraudulently transferring money out of his account, fraudulently creating a Joint Certificate of Deposit, etc. (<u>See</u> Rec. Doc. 1-3, pps. 2-3) Further, Grubaugh alleges that CPB is liable for failing to supervise its employees, failing to follow or implement certain banking policies, breaching Grubuagh's right to privacy, etc. (<u>See</u> Rec. Doc. 1-3, pps. 3-4) In June and July of 2008, Grubaugh filed complaints with the Federal Deposit Insurance Corporation ("FDIC") and the Louisiana Office of Financial Institutions ("OFI") wherein he demanded reimbursement in the amount of $70,902.65. The FDIC and OFI notified CPB of Grubaugh's complaints on July 11, 2008 and July 22, 2008, respectively. On September 12, 2008, CPB responded to Grubaugh and denied all of his claims against it, and Grubaugh filed suit in the Twenty-Second Judicial District Court for the Parish of St. Tammany ("22nd JDC") against CPB; unnamed bank employees, officers, supervisors, and/or managers; and an unnamed Insurance Company on May 26, 2009.[1] In his complaint, Grubaugh alleges that the conduct of the Defendants caused him $84,000 in losses and caused him "embarrassment, inconvenience, and emotional distress." (<u>See</u> Rec. Doc. 1-3, p. 4)

---

[1] On October 5, 2011, Grubaugh amended his petition to include Executive Risk Specialty Insurance company, Blossman Bancshares, Inc. ("Blossman") (CPB's holding company), and the FDIC.  The action was stayed due to Blossman's bankruptcy on January 3, 2012 until April 8, 2013 when the FDIC was substituted as Receiver for CPB. On May 16, 2013, the FDIC removed the action to this Court.

From at least November 1, 2007 through November 1, 2009,[2] Blossman was covered by a commercial general liability policy ("the CGL Policy") issued by Federal. The liability section of the CGL Policy, which is the section at issue herein, applied to CPB because CPB was a controlled subsidiary of Blossman. Grubaugh seeks to assert a direction action against Federal under the CGL Policy, and, on February 11, 2014, Federal filed the instant motion for summary judgment wherein it seeks dismissal of all of Grubaugh's claims arising under the CGL Policy because, it argues, Grubaugh's claims are not covered by the CGL Policy. Grubaugh opposed the motion on February 19, 2014.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists,

---

[2] It is unknown exactly when all of the allegations occurred. However, it can properly be assumed that the incidents must have occurred sometime between September 2005 when Grubaugh opened his checking account and May 26, 2008 when his mother passed away and he learned about the alleged theft. Federal only submitted the CGL Policy for the period of November 1, 2008 through November 1, 2009, meaning that there is no possibility that the plaintiff's claims are covered by the policy submitted into evidence. However, Federal claims that an identical policy was in place from November 1, 2007 through November 1, 2008 which could encompass the Plaintiff's allegations. Plaintiff alleges that he has never been provided with a copy of the earlier policy, so he has not been able to verify that the two policies are identical. Neither party argues that the acts may have occurred in prior to November 1, 2007, thus the Court will not address that issue.

the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."  Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  See Celotex, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or

referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## DISCUSSION

Both parties agree that only four coverage sections of the CGL Policy could potentially apply to the instant matter. The applicable sections provide coverage for Advertising Injury or Personal Injury "caused by an offense committed during the policy period" and to Bodily Injury or Property Damage "which occurs during the policy period." (Rec. Doc. 58-4, p. 38) Both parties agree that the Advertising Injury coverage section does not apply; therefore, the Court will treat each of the three remaining sections below.

### A. Personal Injury

According to the relevant portions of the CGL Policy:

> **Personal injury** means injury, other than **bodily injury**, arising out of [...] oral or written publication of material that violates a person's right of privacy, except when alleged, charged or suffered by any **customer**.

(Rec. Doc. 58-4, p. 58) The CGL Policy further defines that:

> **Customer** means a person, corporation, partnership or other entity which:
> • is applying for, or requesting, your products or services;
> • has applied for, or has requested, your products or services; or
> • has used your products or services,

and who makes a claim or brings a **suit** which arises
out of, or is directly or indirectly related to, any of
the above.

(Rec. Doc. 58-4, p. 53). Grubaugh contends that the definition of
"customer" is vague and should be construed against Federal. He
also contends that he should only be considered a "customer" for
those specific periods in which he was personally engaging in
banking business with CPB, and not during those times that his
family members were allegedly embezzling funds from is account.

Based on a plain reading of this section, the broad definition
of "customer" quite clearly encompasses Grubaugh who, at the time
of the alleged injuries, had requested services from the bank and
used services from the bank, and who brought suit against CPB in
connection with the services rendered. Even if the Court ignored
the allegedly fraudulent transactions, which it expressly declines
to do, Grubaugh would still be considered a customer under this
definition based on his former interactions with CPB, such as
opening his checking account or applying for and obtaining a
certificate of deposit. Therefore, because the relevant portions of
the Personal Injury coverage section does not apply when the
alleged injury is suffered by a customer, the section does not
provide coverage for Grubaugh's claims and summary judgment must be
**GRANTED** on this issue.

## B. Bodily Injury

The CGL Policy provides:
**Bodily injury** means physical,

- injury,

- sickness, or

- disease

sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(Rec. Doc. 58-4, p. 53) Federal argues that this section does not apply because Grubaugh only alleges "embarrassment, inconvenience, and emotional distress," and he admitted in his deposition that his mother and sister did not cause him any bodily injury. (Rec. Doc. 58-1, pps. 6-7; Rec. Doc. 58-3, pps. 2-3).

Grubaugh, on the other hand, objects to Federal's use of his deposition testimony and argues that he did, in fact suffer physical injuries such as "headaches, high blood pressure, stress, emotional distress and metal anguish." (Rec. Doc. 63, p. 5) He further contends that he was prescribed Valium after the learning of the alleged misconduct, has undergone one or more epileptic seizures, and had to undergo bypass surgery and heart valve repair surgery (Rec. Doc. 63, p.4) In support of these assertions, Grubaugh submits: (1) his own affidavit, and (2) the affidavit Pamela Thibodeaux, who is a relative of Grubaugh. In her affidavit, Ms. Thibodeaux states that, after Grubaugh's sister admitted that she took his money, her "impression at the time was that Joseph Grubaugh's blood pressure must have 'sky rocketed' because he was incredibly stressed out" and visibly upset. (Rec. Doc. 63-2, p. 2) Ms. Thibodeaux also affirmed that, from her own personal knowledge,

she knew that he immediately went to a doctor in relation to this
incident. (Rec. Doc. 63-2, p.2) In his own affidavit, Grubaugh
attests that, after learning that his money had been taken, he:

> immediately turned red, went into shock and had to go to
> my primary care doctor at the time, Dr. Gerilynn
> Morrison, on Gauze Blvd., Slidell, Louisiana, where I was
> examined for stress and prescribed valium. I have had one
> or more episodes of epileptic seizures [...], but I do
> not specifically recall seeing any doctor for any
> seizures. I have sustained chronic and physical stress
> [...]. In 2011-12, I was admitted to Louisiana Heart
> Hospital in Lacombe, Louisiana complaining [sic] physical
> effects, including pain and feelings that I was on the
> verge of a stroke. [...] I did have a surgical procedure
> to implant a stent. In 2013 I had difficulty breathing
> and sleeping [...]. I returned for surgery at the
> Louisiana Heart Hospital and had surgery to repair a
> valve in my heart as well as bypass surgery.

(Rec. Doc. 63-3. pps. 5-6) Grubaugh does not submit any
medical records or expert testimony to support his contentions.

In the nearly five years that Grubaugh's claims have been
pending, he did not allege any sort of physical injury until his
opposition to the instant motion for summary judgment. Even in this
opposition, Grubaugh only offers a self-serving affidavit and an
affidavit by a lay relative. He offers no medical records, but
rather rests on the fact that he has signed releases for the
Defendants to obtain such records. The burden to provide the
records is not, however, on any defendant in this matter. Rather,
it is Grubaugh's burden to prove that he suffered an injury.  The
Court finds that he has not met this burden because, as this Court
has held before, when proof of an injury is an essential element of
the claim, when the discovery period is closed, and when a

plaintiff has had ample opportunity to produce his medical records, "a [p]laintiff's own testimony regarding his injuries, without medical support cannot be enough to create a genuine issue of material fact." Cefalu v. Edwards, No. 12-1377, 2013 WL 3338647, *8 (E.D. La. Jul. 2, 2013) (granting summary judgment in favor of the defendant upon plaintiff's failure to produce medical records in support of his consistent allegations that he suffered an injury so as to create liability for excessive force). Plaintiff provides the names of his physicians, thus it is clear that he could have obtained medical records, but simply failed to do so. Further, Grubaugh's instant injury allegations are inconsistent with his prior allegations that he suffered only from mental anguish and emotional distress, which are not covered under the definition of "bodily injury." Taking all of the aforementioned considerations into account, the Court finds that Plaintiff has failed to meet his burden and summary judgment must be **GRANTED** on this issue.[3]

**C. Property Damage**

Property Damage is defined in the Policy as:

physical injury to **tangible property** including the resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

(Rec. Doc. 58-4, p. 58-59)(emphasis added)

---

[3] Inasmuch as Grubaugh objects to the use of his unsigned deposition, the Court defers ruling on the objection as the deposition testimony at issue was not relied up in deciding the instant motion.

Federal argues that this section does not apply because Grubaugh's lost assets were intangible property. Federal cites to case law supporting the general proposition that certificates of deposits and bank accounts are intangible property under Louisiana law; therefore, Federal argues, Grubaugh only asserts loss of use of his intangible property. To the contrary, Grubaugh, citing to Innovative Hospitality Sys., LLC v. Abraham, 2010-217 (La. App. 3 Cir. 4/6/11), 61 So. 3d 740, 745 writ denied, 2011-0845 (La. 6/17/11), 63 So. 3d 1036, argues that he has suffered loss of use of his actual cash, which is tangible.

In Innovative Hospitality, the Louisiana State Third Circuit Court of Appeals dealt specifically with this issue. In that case, the defendant, Abe's Grocery, cashed several checks that were fraudulently drawn from plaintiff Innovative Risk's bank account. Abe's Grocery's insurer, First Specialty, argued that there was no coverage under the property damage section of Abe's Grocery's commercial liability policy because the checks and the bank account were intangible property, which is essentially the argument advanced by Federal in the instant motion. The Third Circuit rejected the insurer's argument in a well-reasoned opinion, wherein it stated:

> Once Abe's Grocery presented cash in exchange for the check, the check was converted into actual funds which were corporeal movables [tangible property]. It was at this point that any responsibility Abe's Grocery may have attached. This action resulted in a loss of use of funds to Innovative Hospitality. It is ridiculous to argue that Innovative Hospitality has not lost actual cash as a result of the cashing of fraudulent checks. The funds in

> its bank account are actual funds deposited at the bank
> by Innovative Hospitality. As a result of Abe's Grocery
> cashing the checks, Innovative Hospitality Systems
> suffered a "loss of use" of its cash money, a corporeal
> movable and therefore, tangible property.

Innovative Hospitality Sys., LLC v. Abraham, 61 So. 3d at 745.
Based on the reasoning in Innovative Hospitality, the court finds
that Grubaugh's claims involve a loss of use of his tangible
property; and therefore, there is potentially coverage under the
property damage section of the CGL Policy and summary judgment must
be **DENIED** on this issue.

### D. La. R.S. § 6:287

Grubaugh argues that, if it is determined that there is no
coverage for his claims under the CGL Policy, CPB may be in
violation La. R.S. § 6:287, which he argues requires CPB to provide
coverage. This argument lacks merit because a plain reading of the
statute shows that the cited provision requires state banks to
"obtain and maintain a fidelity bond." A fidelity bond is not the
equivalent of a CGL Policy, thus this provision does not apply to
the CGL Policy at issue in the instant motion. Further, it appears
from prior motions in this mater that CPB did in fact maintain a
fidelity bond covering all employees. (Rec. Doc. 46). Therefore,
the Court finds that this argument lacks merit.

Accordingly,

Federal's **Motion for Summary Judgment (Rec. Doc. 58)** is
**GRANTED IN PART AND DENIED IN PART.**

11

New Orleans, Louisiana this 27th day of February, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

12