```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA


JOSEPH GRUBAUGH                                 CIVIL ACTION

VERSUS                                          NO: 13-3045

CENTRAL PROGRESSIVE BANK, ET                    SECTION: "J" (4)
AL
```

### ORDER & REASONS

Before the Court is Defendant Federal Insurance Company ("Federal")'s **Motion for Partial Summary Judgment (Rec. Doc. 46)**, Plaintiff Joseph Grubaugh ("Grubaugh")'s opposition thereto (Rec. Doc. 53), Federal's reply (Rec. Doc. 56), and both parties' supplemental briefs filed pursuant to this Court's order. (Rec. Docs. 65, 66) Defendant's motion was set for hearing on February 12, 2014, with oral argument. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that Defendant's motion should be **DENIED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL HISTORY

The underlying facts are largely undisputed for the purposes of this motion and have been fully set forth in prior orders of this Court. (Rec. Doc. 34) Relevant to the instant motion, Grubaugh became a depositor of Central Progressive Bank ("CPB") in September 2005 when he opened a checking account at CPB. Grubaugh's interaction with his account was limited because he left much of

the management of his finances to his mother, Louise Frances Grubaugh, who, along with his sister Shelli Tuillier, was an employee of CPB. Immediately following Ms. Grubaugh's death on May 26, 2008, Grubaugh alleges that he discovered that his account balance was only $1,500 because his mother and sister had committed several wrongful acts, including but not limited to writing fraudulent checks on his account, fraudulently transferring money out of his account, fraudulently creating a Joint Certificate of Deposit and a Joint Savings Account, etc. (Rec. Doc. 1-3, pps. 2-3)

After filing regulatory complaints with the Federal Deposit Insurance Corporation ("FDIC-C") and the Louisiana Office of Financial Institutions ("OFI") in July 2008, and after being informed that CPB denied all of his claims against it, Grubaugh filed suit in the Twenty-Second Judicial District Court for the Parish of St. Tammany against CPB; unnamed bank employees, officers, supervisors, and/or managers; and an unnamed Insurance Company on May 26, 2009.[1] In his complaint, Grubaugh alleges that the conduct of the defendants caused him $84,000 in losses and caused him "embarrassment, inconvenience, and emotional distress." (Rec. Doc. 1-3, p. 4) At the time that Grubaugh filed his regulatory complaints and his claim in state court, CPB was covered by a Financial Institution ForeFront Security Bond ("Bond") that

---

[1] On October 5, 2011, Grubaugh amended his petition to include Executive Risk Specialty Insurance company, Blossman Bancshares, Inc. ("Blossman") (CPB's holding company), and the FDIC. The action was stayed due to Blossman's bankruptcy on January 3, 2012 until April 8, 2013 when the FDIC was substituted as Receiver for CPB. On May 16, 2013, the FDIC removed the action to this Court.

Federal issued to Blossman Bancshares, CPB's holding company, for the bond period of February 1, 2007 through November 15, 2009.

On December 18, 2013, this Court entered summary judgment in favor of Federal's co-defendant, Executive Risk Specialty Insurance Company ("Executive Risk"), finding that Grubaugh was not entitled to assert a direct action against Executive Risk because there was no coverage under the D&O/Banker's Professional Liability Policy issued to Blossman Bancshares by Executive Risk ("the Executive Risk Policy"). (Rec. Doc. 34) Shortly thereafter, on January 14, 2014, Federal filed in instant motion for partial summary judgment, and Plaintiff filed his opposition on February 4, 2012. The Court held oral argument on February 12, 2014, and after hearing from counsel for Grubaugh and Federal, ordered the parties to submit additional briefing regarding whether the lack of express condition precedent language in the Bond at issue distinguishes this matter from First American Title Insurance Co. v. Continental Casualty Co., 709 F.3d 1170 (5th Cir. 2013). (Rec. Doc. 60) The parties each submitted a supplemental brief on February 19, 2014.

**PARTIES' ARGUMENTS**

Federal moves the Court to enter summary judgment in its favor, arguing that Plaintiff is not entitled to bring a direct action against Federal in connection with the Bond it issued to Blossman Bancshares. Federal argues that, for Plaintiff to be able to bring such an action, coverage must exist under the underlying bond, and that in this instance, coverage does not exist. In making

this argument, Federal analogizes the Court's prior order regarding the Executive Risk Policy to the Bond presently at issue. Federal argues that, because this Court determined that coverage was not triggered for the Executive Risk Policy due to CPB's failure to timely notify Executive Risk of Plaintiff's complaints, it is necessarily true that CPB's failure to notify Federal of the same complaints is grounds for finding that coverage does not exist under the Bond. Federal contends that the Bond is a claims made policy and that, under First American, all notice requirements in claims-made policies are a condition precedent to coverage; therefore, CPB's failure to provide notice in exact accordance with the Bond's provisions necessitates a finding that there is no coverage.

Plaintiff argues that there are issues of material fact regarding: (1) whether CPB complied with the Bond's reporting requirements, (2) whether Plaintiff's complaints triggered the Bond's reporting requirements, (3) whether Federal has waived its coverage defense, and (4) whether Federal should be estopped from denying coverage.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c));

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the

nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**DISCUSSION**

Louisiana's Direct Action Statute "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. The Direct Action Statute states its intent is that 'all liability policies within their terms and limits are executed for the benefit of all injured persons....'" Hood v. Cotter, 2008-0215 (La. 12/2/08), 5 So. 3d 819, 829 citing La. R.S. § 22:655(D). Louisiana courts have consistently held that "the statute does not extend the protection of the liability policy to risks that were not covered by the policy unless another statute requires a mandatory coverage provision." Hood, 5 So. 3d at 829. Therefore, the Court must determine whether the risks at issue in this case were covered by the Bond to determine if Grubaugh may bring a direct action against Federal. In making this determination, the Court must bear in mind that "[a]n insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the

parties, the agreement must be enforced as written." Id. Even though courts "must construe any ambiguity in contractual terms against the insurer, [courts] have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language." Id.

The relevant provisions of the Bond state:

11. This Bond applies only to loss first discovered by a director or officer of the ASSURED during the BOND PERIOD. Discovery occurs at the earlier of a director or officer of the ASSURED being aware of:

   A.  facts which would cause a reasonable person to believe that a loss of a type covered by this Bond may subsequently result, or

   B.  an actual or potential claim in which it is alleged that the ASSURED is liable to a third party,

   regardless of when the act or acts causing or contributing to such loss occurred [...].

12. A. The ASSURED shall give the COMPANY notice at the earliest practicable moment, not to exceed sixty (60) days after the discovery of a loss, in an amount that is in excess of 50% of the applicable DEDUCTIBLE AMOUNT.

   B. The ASSURED shall furnish to the COMPANY proof of loss, duly sworn to, with full particulars, within six (6) months after such discovery.

(Rec. Doc. 46-10, p. 35). Based on this policy language, it is clear that a "discovery" occurred when CPB became aware of Grubaugh's regulatory complaints in July 2008; however, CPB did not notify Federal of this discovery until July 2009, shortly after Grubaugh filed his claim in state court. Because CPB did not notify Federal of its discovery "at the earliest practicable moment, not

to exceed sixty (60) days after the discovery of a loss," Federal argues that there is no coverage pursuant to the Fifth Circuit's holding in First American and this Court's order concerning the Executive Risk Policy. Each of these decisions is treated below.

   A. **First American**

        In First American, a claim that would fall under the terms of the policy at issue was made by a third party during the policy period, but the insured did not report the claim to the insurer during the policy period. First American, 709 F.3d at 1172. The Fifth Circuit determined that there was no coverage because in a claims-made-and-reported policy, it is the making and reporting of the claim that creates coverage, not the occurrence of the event. Id. at 1174. The Court went on to reason that failing to enforce the reporting requirement would expand the scope of bargained-for coverage and essentially convert the claims made policy into an occurrence policy. Id. at 1176-77. The reporting requirement is what "allow[s] the insurer to close its books on a policy at its expiration and therefore attain a level of predictability unattainable under standard occurrence policies." Id. at 1175-76 (internal citations omitted). And it is this level of predictability that allows insurers who issue claims-made policies to make certain concessions–such as charging a lower premium. Id. at 1175. Therefore, in First American, because there was no coverage, the third party could not assert a direct action against the insurer.

**B. December 18, 2013 Order**

In a prior order in this same matter, the Court determined that Grubaugh was barred from asserting a direct action against Executive Risk because CPB did not provide timely notice to Executive Risk. (Rec. Doc. 34) In that order, the Court discussed First American, but expressly distinguished it from the instant matter because the claim here was both made and reported during the Policy period.  (Rec. Doc. 34, pps. 10-11) The Court went on to determine that there was no coverage, however, because the express language of the Executive Risk Policy stated that:

> the Insured shall, **as a condition precedent to exercising any right to coverage** under this Coverage Section, give to the Company written notice of a Claim as soon as practicable, but in no event later than [ ... ] sixty (60) days after the date on which any insured first becomes aware that the Claim has been made.

(Rec. Doc. 20-10, pps. 73 & 101; Rec. Doc. 34, p. 11)(emphasis added). So, in this prior order, the Court relied less on the specific result in First American and more on the condition precedent language in the policy.

**C. Federal's Bond**

Federal spends much time persuading the Court that the Bond is a claims made policy, and the Court accepts that, even though the Bond does not expressly state that it is a claims made policy, the language of the "discovery" provision indicates that the Bond is more akin to a claims made policy than an occurrence policy. The similarities between the Bond, First American, and our prior order

regarding Executive Risk stop there, however. First, and unlike the Executive Risk Policy, the Bond does not include condition precedent language in its reporting provision or any other similar language that the Court could construe as language that created a condition precedent. Further, and as the Court also noted in the Executive Risk order, the underlying facts of this case differ from those in First American in that Grubaugh made his claim *and CPB reported his claim* during the Bond period. Thus, CPB's error lies in not reporting the claim within the 60-day time frame for reporting. This error was fatal to coverage under the Executive Risk Policy because the 60-day reporting period was an express condition precedent. In reading the Bond, the Court finds that no such condition precedent language exists in connection with the actual time line for reporting a claim and the Court will not read terms into the Bond. If Federal wanted the specific time line of the reporting requirement to be a condition precedent, they were required to include language to that effect.

    Therefore, the Court finds that, because the loss was discovered and reported within the Bond period, coverage exists under Federal's bond even though the precise time line for reporting was not followed. This decision is not at odds with the reasoning in First American because the problems that the Court sought to avoid in First American are still successfully circumvented. The scope of Federal's bargained-for coverage has not

10

been expanded and Federal's ability to "close its books on [the Bond] at its expiration" was not impeded because the loss was discovered and reported during the Bond period at a time when any other claim could have arisen. First American, 709 F.3d at 1175-76; see Prodigy Communications Corp. v. Agricultural Excess & Surplus Ins. Co., 288 S.W.3d 374, 377-78 (Tex. 2009) (in a claims-made policy, a breach of the "as soon as practicable" notice requirement is immaterial and does not affect scope of bargained-for exchange).

Though CPB's untimely notice did not destroy coverage in this instance, the general rule in Louisiana is still that "where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." Peavey Co. v. M/V ANPA, 971 F.2d 1168, 1173 (5th Cir. 1992). Therefore, if Federal can prove that it was prejudiced by the late notice, Grubaugh could still be precluded from bringing a direct action.

Accordingly,

Federal Insurance Company ("Federal")'s **Motion for Partial Summary Judgment (Rec. Doc. 46)** is **DENIED.**

New Orleans, Louisiana this 27th day of February, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

11